**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **MICHAEL BORIA** | ) | |
| **v.** | ) | **CIVIL NO. 05-40083-NMG** |
| **UNITED STATES OF AMERICA** | ) | **Leave to file granted on 3/14/18** |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S SECOND MOTION UNDER**
**28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE**

## BACKGROUND

### I. Procedural History

On November 30, 2001, following a four-day jury trial, Michael Boria was found guilty of five counts of distributing heroin and two counts of distributing methamphetamine. He was sentenced on March 5, 2003 – approximately two years before the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the sentencing guidelines are advisory. The Court found that Boria was accountable for sales of heroin and methamphetamine (or counterfeit heroin and methamphetamine) equivalent to 632.9 kilograms of marijuana, yielding a base offense level of 28, and imposed a two-level increase for role in the offense and another two for obstruction of justice, resulting in a total offense level of 32.

Sent. Tr. at 5-20. The Court also found that Boria was a career offender under USSG § 4B1.1, which boosted his offense level to 34, and that he had 31 criminal history points, placing him in Criminal History category VI. Sent. Tr. at 20-23. The resulting sentencing range was 262-327 months. Sent. Tr. at 23. Had Boria not qualified as a career offender, his total offense level would have been 32 rather than 34, and his sentencing range would have been 210-262 months.

The Court sentenced Boria to 327 months' imprisonment – the high end of the range... It noted that Boria had "one of the longest records this judicial officer has ever seen," including "convictions for robbery; again robbery; possession of Class B substance; possession of Class A substance; trespass; possession of Class B substance; armed robbery; again, armed robbery; assault and battery with a dangerous weapon; assault with a dangerous weapon; armed robbery; assault to rob; larceny over $250; possession of Class B substance; operating under the influence; leaving the scene; possession of heroin; possession of Class A substance." Sent. Tr. at 21.

The government moved for an upward departure under USSG §4A1.3 on the grounds that Boria's criminal history category did not adequately reflect his criminal history or the likelihood that he would reoffend. Sent. Tr. at 23-33. It noted that his number of criminal history points (31) far exceeded the total need to

put him in Criminal History Category VI (13), and that those 31 points did not even include half a dozen convictions -- including convictions for assault with intent to kill, carrying a firearm, and several armed robberies -- that had occurred over 15 years earlier or had resulted in concurrent sentences. *See, e.g., United States v. Brown*, 899 F.2d 94, 96-98 (1st Cir. 1990) (upholding upward departure where defendant had 20 criminal history points and, like Boria, a "substantial amount of excluded criminal conduct"). It also noted that Boria had begun selling heroin and methamphetamine less than six months following his release from prison after serving 7-1/2 years for a series of armed robberies and assaults, PSR ¶ 89, and that during the brief period between his release and his rearrest, he had been charged in no fewer than *seven new cases* -- all of them involving violent crimes or drug crimes -- three of which resulted in convictions and sentences of one year or more, and one of which (a drug trafficking case in Worcester Superior Court) was still pending at the time of trial. PSR ¶¶ 85-87, 93, 101-103. *See United States v. Parkinson*, 44 F.3d 6, 10 (1st Cir. 1994) (upholding upward departure where defendant had 23 criminal history points and, like Boria, committed new crimes shortly after release from another sentence). Finally, the government noted that Boria had began committing crimes no later than his 18th birthday, and that the only significant gaps in his criminal history correspond to

periods of incarceration, leaving little doubt that he would resume his life of crime upon his release.

The Court denied the government's motion, finding that "the Sentencing Commission has taken into account the seriousness of this offense and has established the Career Offender Guidelines with [this] purpose in mind." Id. But the Court did find that Boria's conduct and criminal history warranted a sentence at the high end of the applicable guidelines range, and it imposed sentence accordingly.

Boria filed a direct appeal that challenged two evidentiary trial rulings but did not allege any errors in his sentencing. The Court of Appeals rejected his arguments and affirmed his convictions on March 3, 2004. Boria moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on May 27, 2005, asserting that his counsel had been ineffective at trial and that he had been denied the right to have a jury determine all facts affecting his guidelines sentencing range. The Court denied the motion on the merits on October 27, 2005. Approximately 10 years later, on January 15, 2015, Boria filed a motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) and USSG Amendment 782. The Court denied that motion on December 1, 2015.

On June 26, 2016, the Supreme Court held in *Johnson v. United States*, 135

S.Ct. 2551 (2015) ("*Johnson II*"), that the Armed Career Criminal Act's so-called residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. A little less than one year later, on June 21, 2017, Boria applied to the First Circuit for leave to file a second or successive section 2255 motion challenging his sentence under *Johnson II*. On November 17, 2017, the Court of Appeals granted the application, authorizing Boria "to pursue in the district court a challenge to his 'career offender' designation based on *Johnson*." The Court also ruled that Boria's motion challenging his sentence under *Johnson II* should be deemed to have been filed in this Court on June 21, 2017.

## II. The Predicate Offenses

At the time Boria was sentenced, USSG §4B1.2 provided in relevant part:

**§4B1.2. Definitions of Terms Used in Section 4B1.1**

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, [or] involves use of explosives. . . .

Application Note 1 of the guideline further provided:

"Crime of violence" includes murder, manslaughter,

> kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

The Probation Office found that Boria was a career offender based on the following offenses: California robbery (1985), Massachusetts armed robbery (1991), Massachusetts armed robbery, assault and battery with a dangerous weapon, assault with a dangerous weapon (1991). See PSR ¶ 91 (citing PSR ¶¶ 78, 82, 83).

a. California Robbery. The Ninth Circuit has held that California robbery does not qualify as a "crime of violence" under the ACCA's "elements" clause because it does not require the intentional use of force, s*ee United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (citing *People v. Anderson*, 51 Cal.4th 989, 252 P.3d 968, 972 (2011)), but that it is still a crime of violence because every violation of the statute necessarily constitutes either generic extortion or generic robbery, s*ee United States v. Becerril-Lopez*, 541 F.3d 881, 893 (9th Cir. 2008); *see also United States v. Flores-Mejia*, 687 F.3d 1213, 1214 (9th Cir. 2012). In so holding, the Ninth Circuit found it immaterial whether an offense was designated a crime of violence in the guideline's text as opposed to the application note. *Id.*

The First Circuit has taken a different view of the relationship between §4B1.2's text and its commentary – one that the government contends is erroneous.

In *United States v. Soto-Rivera*, 811 F.3d 53 (1st Cir. 2016), the First Circuit held that to the extent §4B1.2(a)(2)'s commentary lists robbery and certain other offenses as crimes of violence, the commentary is merely a gloss on the guideline's residual clause and therefore cannot be valid if the residual clause itself is not valid. *See* 811 F.3d at 61. Boria is therefore correct that, under *Soto-Rivera*, if §4B1.2's residual clause is unconstitutionally vague, generic robbery does not categorically qualify as a "crime of violence," and neither, it follows, does California robbery.

The government contends that *Soto-Rivera* was wrongly decided for substantially the same reasons that have led other courts to reject its reasoning. *See, e.g.*, *United States v. Hall*, 714 F.3d 1270, 1274 (11th Cir. 2013); *United States v. Kinman*, No. 16CV1360, 2016 WL 6124456, at *10 (S.D. Cal. Oct. 20, 2016), *aff'd*, No. 16-56568, 2017 WL 4863121 (9th Cir. July 18, 2017). The government notes its disagreement with *Soto-Rivera* to preserve the issue for possible reconsideration in this case if changes in the law vindicate the government's position.

b. Massachusetts armed robbery. The government concedes that under *United States v. Starks*, 861 F.3d 306 (1st Cir. 2017), Massachusetts armed robbery does not categorically qualify as a "crime of violence" under the "elements" clause

of USSG §4B1.2; and, for purposes of this case, the government does not contend that it qualifies as generic robbery under USSG §4B1.2's commentary.

c. Massachusetts assault with a dangerous weapon. Boria concedes, as he must, that under *United States v. Fields*, 823 F.3d 20 (1st Cir. 2016), Massachusetts assault with a dangerous weapon qualifies categorically as a "crime of violence" under the "elements" clause of USSG §4B1.2. *Id.* at 33-35 (citing *United States v. Whindleton*, 797 F.3d 105, 111-16 (1st Cir. 2015)).

In sum, under the current state of the law in the First Circuit, if §4B1.2's residual clause was unconstitutional during the "mandatory' guidelines era, as Boria contends, then Boria had only one scoreable conviction that qualified as a "crime of violence" at the time he was sentenced, and he was not a career offender under the guidelines.

**ARGUMENT**

The Court should deny Boria's motion for two reasons. First, Boria's conviction became final on May 1, 2004. That means Boria's motion is timely (1) only if the Supreme Court, in *Johnson II*, newly recognized a right to challenge sentences based on allegedly vague provisions of the "mandatory" sentencing guidelines, and (2) only if that right applies retroactively on collateral review. Although this Court answered those questions in the affirmative in *United States v.*

*Roy*, 282 F.Supp.3d 421 (D. Mass. 2017), the government respectfully asks the Court to realign its views with virtually every other court to consider the question and hold the opposite.

Second, regardless of whether Boria can show "cause" for failing to raise his claim in the trial court or on direct appeal, he cannot show "actual prejudice" from the Court's alleged error in calculating his sentencing range, because the Court made clear at sentencing that Boria was a paradigmatic career offender whose lifelong record of serious crime warranted the sentence he received even had he not qualified as a career offender under the guidelines.

**I. <u>Boria's is Time-Barred</u>**

Boria's motion is time-bared because he did not file it within one year of the date on which his judgment became final, and no exception to the one-year time limit applies. 28 U.S.C. § 2255(f)(1) requires that a motion to vacate sentence be filed within one year of the date the judgment becomes final by the completion of direct review, which in this case occurred on May 1, 2004. *See Clay v. United States*, 537 U.S. 522 (2003) (where conviction is affirmed on direct appeal and defendant does not petition for *certiorari*, conviction becomes final 90 days after affirmance). Boria did not file his section 2255 motion until nearly 12 years after that date.

Section 2255 contains three exceptions to the one-year filing deadline, one of which treats a motion as timely if it is filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Boria's motion meets neither criterion: he does not assert a right that has been "recognized by the Supreme Court," and even assuming he does assert such a right, it is not a right that may lawfully be made "retroactively applicable" to cases on collateral review.

For a right to qualify as "newly recognized" under section 2255, it must have been recognized "by the Supreme Court" itself. *See Dodd v. United States*, 545 U.S. 353, 357-358 (2005). But the Supreme Court decision on which Boria relies, *Johnson II*, established only a due process right not to be sentenced pursuant to a vague federal enhance statute. 135 S. Ct. at 2555, 2561. Boria, in contrast, asserts a due process right not to have his guidelines range within otherwise-fixed statutory limits calculated under an allegedly vague provision. The Supreme Court has not yet recognized such a right, and it recently indicated that it might never do so. *See Beckles v. United States*, 137 S. Ct. 886, 903 n.4 (2017) (Sotomayor, J., concurring) (noting that the majority's opinion "leaves open" the question whether mandatory sentencing guideline rules are subject to vagueness

challenges, and explaining that "[t]hat question is not presented by this case and I, like the majority, take no position on its appropriate resolution"). Boria will only become eligible to take advantage of section 2255's "newly recognized" right exception if and when the Supreme Court recognizes the right he seeks to assert. *See Raybon v. United States*, 867 F.3d 625, 629 (6th Cir. 2017) (whether Johnson "applies to the mandatory guidelines . . . is an open question"); *United States v. Greer*, 881 F.3d, 1241, 1247 (10th Cir. 2018) ("The right that Mr. Greer 'asserts' is a right not to be sentenced under the residual clause of § 4B1.2(a)(2) of the mandatory Guidelines. The Supreme Court has recognized no such right. And nothing in *Johnson* speaks to the issue"); *In re Griffin*, 823 F.3d 1350 (11th Cir. 2016) (similar); U*nited States v. Foley*, Case No. 1-CR-34, 2018 WL 1626111, at *5 (D. Vt. Mar. 30, 2018) ("The application of Johnson to the residual clause of the mandatory Guidelines . . . is not a 'right' that 'has been newly recognized by the Supreme Court'"); *Bryant v. United States*, 2018 WL 1010212, at *3 (S.D.N.Y. Feb. 20, 2018) ("The weight of post-Beckles authority supports [the] conclusion" that the Supreme Court has not recognized such a right under the mandatory guidelines); *Velazquez v. United States*, Case No. 00-CR-290, 2018 WL 704682, at *3 (M.D. Pa. Feb. 5, 2018) ("[I]n light of the Supreme Court's holding in Beckles, it is apparent that the right or 'new rule' upon which Petitioner's Section 2255

motion relies has not yet been 'recognized' by the Supreme Court. This Court joins the many other district courts that have addressed this issue and either dismissed or denied *Johnson*-based Section 2255 motions challenging the residual clause of the pre-*Booker* mandatory sentencing guidelines as untimely.") (collecting cases); *United States v. Colasanti*, 2017 WL 4273300, at *4 (D. Or. Sept. 26, 2017) (same).

Indeed, far from holding in *Johnson II* that mandatory guidelines are subject to vagueness challenges, the Court's reasoning in *Beckles* indicates that the opposite is true. Johnson entertained a vagueness challenge to the ACCA because it is a federal statute that alters the statutory sentencing range for a crime (triggering a 15-year mandatory minimum that would exceed the otherwise-applicable unenhanced 10-year statutory maximum). But the guidelines have never had that effect: even before Booker, the Guidelines did not fix minimum or maximum sentences in the same way that a federal statute does because the Guidelines, even when mandatory, "do not * * * vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta v. United States*, 488 U.S. 361, 396 (1989); *see United States v. Rodriquez*, 553 U.S. 377, 390 (2008). Although the pre-*Booker* guidelines established sentencing ranges that were in a sense "mandatory," they

allowed a sentencing judge to impose a non-guidelines sentence "under appropriate circumstances," R*odriquez*, 553 U.S. at 390 – a power this Court expressly acknowledged when it sentenced Boria. The Court stated at the sentencing hearing:

> The Court has considered this motion [for an upward departure] carefully. As counsel are probably aware, this session is perhaps less willing to downwardly depart than some of my colleagues in the Eastern Division. I am also less willing to upwardly depart, especially when I think that the Sentencing Commission has taken into account the seriousness of this offense and has established the Career Offender Guidelines with purpose in mind.

Sent. Tr. at 32. This court's recognition of judges' power and willingness to depart from the "mandatory" guidelines underscores that the "mandatory" guidelines did not "fix the permissible range of sentences" in the same way that a statute does. *Beckles*, 137 S.Ct. at 892.

Even if the *Johnson II* Court had recognized a right to challenge mandatory guidelines on vagueness grounds, moreover, that right would not apply retroactively to cases on collateral review because it is procedural (as opposed to substantive) and not a "watershed rule." It would neither decriminalize any primary conduct nor prohibit the imposition of certain punishments on a class of persons. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 729-731 (2016). Instead, it would function in a procedural manner: it would alter the computation of

Boria's guidelines range but would not require that he receive a different sentence, because his current sentence is well within the authorized limits established by statute for his crimes. For these reasons, and because this rule would not be a "watershed" rule of procedure, neither logic nor necessity dictates that it be applied retroactively to cases on collateral review. *See Tyler v. Cain*, 533 U.S. 656, 667-668 (O'Connor, J., concurring).

## II. <u>Boria's Claim is Procedurally Defaulted.</u>

Boria cannot show that the alleged miscalculation of his guidelines range resulted in the "actual prejudice" needed to excuse his procedural default in failing to raise that issue at sentencing or on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Boria suffered no prejudice because the Court would have imposed the same sentence even if Boria had not qualified as a career offender under the guidelines. The Court made clear at the sentencing hearing that it regarded Boria as a quintessential career offender and that a sentence at the high end of the career-offender was necessary to achieve the goals of punishment and deterrence. Had the Court calculated Boria's guidelines range as Boria now says it should have, the Court would still have been free to grant the government's motion for upward departure and sentence Boria as a career offender. If the Court determines that it

would have done so, Boria suffered no "actual prejudice" from the alleged error, and his motion is procedurally barred. *Cf. United States v. Carrozza*, 4 F.3d 70, 88 (1st Cir.1993) ("[An] error in applying the guidelines may prove to be harmless if the court makes clear that it would have departed to the same sentence regardless of the exact guideline range."); *Morales v. United States*, No. 09-4394, 2011 WL 3423937, at *3 (S.D.N.Y. Aug. 3, 2011) (citing cases).

WHEREFORE, the government respectfully requests that Boria's motion be dismissed or denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: /s/ William Weinreb
WILLIAM D. WEINREB
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ William D. Weinreb*

WILLIAM D. WEINREB